**Gladstone FORD, Plaintiff,**

v.

**AMERICAN BROADCASTING CO., INC. et al, Defendants.**

**No. 78 Civ. 2596 (PNL).**

United States District Court, S.D. New York.

July 6, 1983.

Gladstone T. Ford, pro se.

Richard J. Reibstein, Epstein Becker Borsody & Green, P.C., New York City, for defendants.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Defendants move pursuant to Rule 37, Fed.R.Civ.P., for discovery sanctions and costs, including attorney's fees. This is a Title VII action in which plaintiff, an attorney, alleges that defendants unlawfully discriminated against him in making certain post-employment references to prospective employers, including agents of the Federal Bureau of Investigation ("FBI") who were investigating his suitability for employment as an attorney in the New York regional office of the United States Immigration and Naturalization Service ("INS"). Defendants deny the allegations and contend that, in any event, INS did not rely on their references in deciding not to hire plaintiff.

Plaintiff instituted this lawsuit in 1978 and since that time has consistently attempted to frustrate defendant's legitimate discovery demands. Defendants have twice before moved for discovery sanctions. Although I hesitated to impose severe sanctions, I did find on March 22, 1982 that

"plaintiff's long continued failure to comply with proper discovery demands and court orders represents impermissible obstruction of the rights of defendants to prepare for trial." *Ford v. American Broadcasting Companies, Inc.,* 78 Civ. 2596, slip op. at 2 (S.D.N.Y. March 22, 1982). Based on that finding, I entered an order precluding plaintiff from offering evidence of his law school record and LSAT scores as proof of his qualifications for the INS position. I also indicated that the court might "draw inferences unfavorable to the plaintiff as to the content of the material not disclosed." *Id.*

This motion concerns additional material withheld by plaintiff from defendants. In November 1979, defendants had served a notice of deposition on plaintiff and requested that he produce at the deposition:

> All letters, memoranda, resumes, applications, documents, books, and records of every kind and description now in his possession or under his control concerning his efforts to obtain employment or other gainful occupation after he ceased employment with American Broadcasting Companies, Inc., and all such materials concerning the result of his efforts ...

In December 1979, defendants moved to compel answers to oral questions and the production of documents, including "[a]ny and all documents relating to the results of plaintiff's efforts to find employment." On January 18, 1980, I entered an order granting defendants' motion to compel and directing plaintiff to produce the requested documents within ten days.

When defendants first moved for sanctions for failure to produce those documents, plaintiff stated under oath that "with the exception of one inadvertent oversight involving a few pages of materials, and an ambiguity in one of the categories demanded, I have supplied defendants with all documents in my possession or control that are responsive to their demand." Ford affidavit of February 27, 1980, ¶ 3, at 2. Plaintiff's counsel also stated under oath that "the extent of his [plaintiff's] noncompliance with defendants'

discovery demand was insignificant and inadvertent." Warner affidavit of Feb. 27, 1980, ¶ 2, at 1.

At his deposition, plaintiff made similar statements. For example, when asked "are there any documents in your custody or control or possession which you have not provided to defendants relating to the results of any efforts you might have made to obtain employment," plaintiff answered "[n]one that I can remember at this moment in time." Ford deposition transcript p. 399, April 28, 1980.

In October 1981, defendants served a subpoena duces tecum on the INS to produce records in its possession concerning plaintiff. Because plaintiff refused to consent to the release of those documents, defendants were required to obtain a court order, over plaintiff's objection, directing INS to disclose the records in its possession.

After reviewing the INS file, defendants filed this motion asserting that plaintiff had failed to produce approximately 138 pages of documents which had been sent to plaintiff by the INS. Plaintiff now admits that he received copies of each of the approximately 61 pages of documents in the INS file which were addressed to him.

These documents obviously and unquestionably came within the discovery demand. Plaintiff's failure to produce them was willful and in bad faith. The material is particularly damaging to plaintiff's case. The Supplemental Investigation Report which was furnished to plaintiff by INS on November 3, 1977, for example, states at 198:

> Mr. Wack indicated that he did recall the case of the complainant, specifically and that after the complainant had been selected by the Service for the job, the full-field investigation was done by the Federal Bureau of Investigation, the results of which indicated that the complainant had finished very low in his law school class and made several attempts to pass the New York Bar Examination before finally passing the Bar Exam in the District of Columbia. Mr. Wack stated that he discussed the matter with Mr.

Rudnick, and it was their decision not to hire the complainant based upon his academic record.

It continues at 199:

> Mr. Rudnick stated that the decision not to hire the applicant was based solely on the information obtained in the full-field background investigation indicating that the complainant had a poor law school academic record. Mr. Rudnick denied that the applicant's race had any bearing whatsoever on the decision not to hire him.

Sworn statements by Wack and Rudnick were attached as exhibits to the report. Those statements recite that plaintiff was not hired because of his low standing in his law school class and his failure to pass the New York bar exam. They do not advert to the references given by the defendants.

Plaintiff now contends that he withheld these documents because he believed they were not within the discovery request. He asserts first that most of the documents were sent to him by the Equal Employment Opportunity Commission in connection with a complaint he filed with the EEOC seeking redress for INS' allegedly improper refusal to hire him and that such papers do not concern his "efforts to obtain employment" or "the results" thereof. The contention is frivolous. Furthermore, the INS file demonstrates that in fact, the bulk of the documents, including the Supplemental Investigation Report, were sent to plaintiff by INS. Even if they had been sent to him by the EEOC, they would still come clearly within the scope of defendants' document requests and this court's orders. They unquestionably concern plaintiff's efforts to obtain employment. The fact that plaintiff did produce four relatively innocuous letters from INS related to his claim that INS discriminated against him is further evidence that his present claim of confusion is disingenuous.

■ Rule 37 authorizes a broad range of sanctions when a party fails to permit discovery or to comply with the court's discovery orders. The sanctions range from

an order to reimburse the opposing party for expenses to orders striking out portions of the pleadings, prohibiting the introduction of evidence, deeming disputed issues determined adversely to the position of the disobedient party, or rendering a default judgment against the disobedient party. Fed.R.Civ.P. 37; *see Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1066 (2d Cir.1979). In determining which sanction, if any, is appropriate, a court should properly consider the willfulness of the party's behavior. *Cine Forty-Second St. Theatre v. Allied Artists, supra*, 602 F.2d at 1066 n. 8. A dismissal is, of course, a particularly harsh sanction and should be used only when noncompliance is due to "willfulness, bad faith, or ... fault." *Societe Internationale Pour Participations Industrielles et Commerciales S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958).

■ Although the courts should not use this severe sanction freely,

the most severe in the spectrum of sanctions ... must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam).

Dismissal is particularly appropriate in this case. Plaintiff is an attorney, well aware of his discovery obligations. He has repeatedly failed to produce material that is damaging to his case. After plaintiff refused to disclose his LSAT scores and law school record, I entered an order precluding him from offering evidence of his test scores or academic record. In view of the nature of that material, it is evident that his refusal to produce it was in bad faith and without justification. The INS documents refer in several places to plaintiff's low academic standing (he ranked 191 out of a class of 209 at Fordham Law School) as a reason for the decision not to hire him as a staff attorney. The circumstances establish that plaintiff's failure to reveal this material was because of his accurate perception that it would furnish his adversary with evidence that was devastating to his case. He fought the enforcement of the subpoena to the INS for the same reason, as well as to conceal his misconduct.

There is no question that a court should exercise prudence, caution, and leniency before punishing violations of rules with sanctions so extreme as to deny a litigant the effective opportunity to have his case heard. Courts also must be wary lest laziness, incompetence or lack of interest on the part of the legal representative unfairly victimize a client who chooses his lawyer without sophistication or advantage. The sins or omissions of lawyers should not mechanically be visited on the client, especially where the result would be to undermine the usefulness and fairness of our legal and judicial system.

None of those considerations are applicable here, however. Plaintiff is not an unsophisticated man victimized by the infidelity or lack of diligence of his lawyer. Plaintiff is himself a lawyer. The failures of disclosure were his own, not those of his lawyer. And most important, those failures are not the result of oversight, negligence, lack of interest, confusion or incompetence. They result from plaintiff's own bad faith and dishonest conduct, his deliberate and selective attempt to deceive by concealing evidence which he well knows would be powerfully damaging to his lawsuit. This constitutes an attempt to obstruct justice. *See In re Perkins*, 69 A.D.2d 160, 419 N.Y.S.2d 1 (1979) (attorney jailed for contempt and severely censured for failure to disclose documents). Compounding the dishonesty of the concealment of properly demanded discovery has been plaintiff's further dishonesty in furnishing false and deceitful affidavits and testimony on the subject.

I conclude that this case is significantly more deserving of extreme sanctions than *Cine-Forty Second St., supra*, where there was no issue of dishonesty, concealment or

obstruction of justice by the party but only of "gross negligence" of counsel, tantamount to willfulness.

Furthermore, lesser sanctions on these facts would be ineffectual and would virtually encourage the dishonest practices by which plaintiff has imposed on his adversaries.

I have also considered whether it would be a sufficient and more appropriate sanction to deem affected issues conclusively determined against plaintiff and to permit the action to proceed on other questions. I find this would not be appropriate in the circumstances of this case. Were I to determine conclusively that the INS decision not to hire plaintiff was not based on defendant's references, it would be a sham and an imposition on all parties to allow the litigation to go forward. Courts should of course bend over backwards to allow a fair opportunity to disadvantaged litigants. It does not follow that courts should permit dishonest and contemptuous practices to abuse the court processes.

The action is dismissed.

SO ORDERED.